UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME COTA,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTY OF KERN and ERNEST ALVARADO,<br><br>        Defendants. | Case No.: 1:12-cv-01618- JLT<br><br>PRETRIAL ORDER<br><br>Deadlines:<br><br>Motions in Limine Filing: 4/1/15<br>Oppositions to Motions in Limine: 4/17/15<br>Hearing on Motions in Limine: 4/28/15, 10:30 a.m.<br><br>Trial Submissions: 5/1/15<br><br>Jury trial: 5/13/2015, 8:30 A.M. |

    Plaintiff Jaime Cota claims that Defendant Ernest Alvarado, a deputy sheriff and employee of the County of Kern, entered Plaintiff's property and arrested him without a warrant or probable cause, and used excessive force in the course of the arrest. Plaintiff alleges Defendants are liable for violations of his civil rights arising under the Fourth and Fourteenth Amendments to the Constitution of the United States, a violation of the Bane Civil Rights Act, false arrest and/or imprisonment, assault, battery, intentional infliction of emotional distress, and general negligence. (*See generally* Doc. 1.)

    Upon consideration of the Joint Pre-Trial Conference Statement (Doc. 24), the parties' comments at the hearing on February 2, 2015, and the file in this case, the Court issues the following Pre-Trial Order.

///

1

**A.    JURISDICTION/ VENUE**

The Court has jurisdiction over the claims in this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1367(a).  (Doc. 1 at 4-5; Doc. 48 at 2.)  Further, Plaintiff's claims arise out of events that occurred in Kern County, California.  Accordingly, venue is proper in the United States District Court for the Eastern District of California sitting in Bakersfield.  *See* 28 U.S.C. § 1391.

**B.    JURY TRIAL**

Plaintiff included a demand for jury trial in the Complaint.  (Doc. 1 at 1.)  Thus, trial will be by jury.

**C.    UNDISPUTED FACTS**

1. The incident upon which this action is premised took place on or about December 4 and December 5, 2011.
2. Plaintiffs' claims herein arise out of an incident involving the Kern County Sheriff's Office, in the County of Kern, State of California, and within this judicial district.
3. Defendant, ERNEST ALVARADO is a deputy sheriff and employee of the Kern County Sheriff's Office and Defendant, COUNTY OF KERN, acting within the course and scope of such employment and under color of law on December 4, 2011.
4. Defendant, COUNTY OF KERN, is a political subdivision of the state and the public employer of Defendant, ERNEST ALVARADO, on December 4, 2011.
5. Defendant ERNEST ALVARADO did spray Plaintiff in the face with a chemical agent and did push back on Plaintiff.

**D.    DISPUTED FACTS**

All other facts are in dispute, including:

1. Whether Plaintiff was beat with a baton, punched and kicked.
2. Whether Plaintiff lost consciousness.
3. Whether Deputy Alvarado was deliberately indifferent to a known serious medical need of Plaintiff.
4. Whether Deputy Alvarado violated Plaintiff's Fourth Amendment rights.
5. Whether Kern County or the Kern County Sheriff's Department had a custom or policy

|   |   |   |
|---|---|---|
| | | that proximately caused a deprivation of constitutional rights. |
| | 6. | Whether Kern County or the Kern County Sheriff's Department had a custom or policy of deliberate indifference to inmates known serious medical needs which was a proximate cause of Plaintiff's injury. |
| | 7. | The nature and extent of Plaintiff's damages. |
| | 8. | Whether Deputy Alvarado acted in willful or reckless disregard of federally guaranteed rights such that exemplary damages are appropriate. |
| | 9. | Whether Deputy Alvarado was lawfully on Plaintiff's property when he arrested Plaintiff. |
| | 10. | Whether Deputy Alvarado had probable cause to arrest Plaintiff for public intoxication. |
| | 11. | Whether Deputy Alvarado used reasonable force to effect the arrest of Plaintiff. |
| | 12. | Whether Deputy Alvarado is entitled to qualified immunity. |

**E.    DISPUTED EVIDENTIARY ISSUES**

None at this time.

**F.    RELIEF SOUGHT**

Plaintiff seeks general and special damages for his physical and emotional injuries. Also, Plaintiff seeks punitive damages against Defendant Alvarado. Further, Plaintiff seeks an award of attorney's fees and costs. (*See* Doc. 1 at 23-24; Doc. 23 at 5.)

**G.    POINTS OF LAW**

### 1.    Fourth Amendment Violations

The Fourth Amendment prohibits the use of excessive force, searches and arrests without probable cause or other justification, and provides: "The right of the people to be secure in their persons. . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing . . . the persons or things to be seized." *U.S. Constitution, amend. IV*.

### a.    Unlawful arrest

A claim for unlawful arrest is cognizable when the arrest is alleged to have been made without probable cause. *Dubner v. City & County of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001).

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023 (9th Cir. 2009) (quoting *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)).

b. Searches

For the protections of the Fourth Amendment to attach, an individual must have a reasonable expectation of privacy in the place that is invaded. *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 533 (9th Cir. 2010) (citing *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)). Generally, "a search of a home or residence without a warrant is presumptively unreasonable." *Id.* (citing *Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012, 1016 (9th Cir. 2008)).

c. Excessive force

A plaintiff's "claim[s] that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' ... are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989); *see also Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) ("the use of force to effect an arrest is subject to the Fourth Amendment's prohibition on unreasonable seizures"). The Supreme Court explained,

> As in other Fourth Amendment contexts . . . the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Graham*, 490 U.S. at 396-97 (internal citations omitted).

Applying this standard, the fact-finder considers "the totality of the circumstances and . . . whatever specific factors may be appropriate in a particular case." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010). Thus, factors to be considered in evaluating whether the force used was reasonable include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). Further, the fact finder may consider "whether officers administered a warning, assuming it was practicable." *George v.*

4

*Morris*, 736 F.3d 829, 837-38 (9th Cir. 2013) (citing *Scott v. Harris*, 550 U.S. 372, 381-82 (2007). Ultimately, the "reasonableness" of the actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

### 2. Fourteenth Amendment Violations

Where a plaintiff has not been convicted by a crime, but has been placed under arrest, "his rights derive from the due process clause rather than the Eighth Amendment's protection against cruel and unusual punishment." *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002). Nevertheless, with issues related to health and safety, "the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes." *Gibson*, 290 F.3d at 1187. Therefore, the requisite standard of care afforded Plaintiff under the Fourteenth Amendment may be determined by applying the standards set forth by the Eighth Amendment, which proscribes "unnecessary and wanton infliction of pain," including "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation and quotation marks omitted).

To establish a claim of inadequate medical care, a plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. The Ninth Circuit explained: "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

#### a. Serious medical need

A serious medical need exists "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991) (*overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997)) (quoting *Estelle*, 429 U.S. at 104). Indications of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059-60 (citing

*Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

### b. Deliberate indifference

In addition to establishing the existence of a serious medical need, a plaintiff must show the officer responded to that need with deliberate indifference. *Farmer*, 511 U.S. at 834. In clarifying the culpability required for "deliberate indifference," the Supreme Court held,

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exits, and he must also draw that inference.

*Farmer*, 511 U.S. at 837. Therefore, a defendant must be "subjectively aware that serious harm is likely to result from a failure to provide medical care." *Gibson*, 290 F.3d 1175, 1193 (9th Cir. 2002) (emphasis omitted). When a defendant should have been aware of the risk of substantial harm but, indeed, was not, "then the person has not violated the Eighth Amendment, no matter how severe the risk." *Id*. at 1188.

Where deliberate indifference relates to medical care, "[t]he requirement of deliberate indifference is less stringent . . . than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns." *Holliday v. Naku*, 2009 U.S. Dist. LEXIS 55757, at *12 (E.D. Cal. June 26, 2009), citing *McGuckin*, 974 F.2d at 1060. Claims of negligence or medical malpractice are insufficient to claim deliberate indifference. *Id*. at 394; *Toguchi*, 391 F.3d at 1057. Generally, deliberate indifference to serious medical needs may be manifested in two ways: "when prison officials deny, delay, or intentionally interfere with medical treatment, or . . . by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 393-94 (9th Cir. 1988).

### 3. Bane Act Violation

The Bane Act provides a cause of action for interference "by threats, intimidation, or coercion" or attempted interference, "with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ.Code § 52.1(a); *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 843 (2004) ("Civil Code section 52.1 does not extend to all ordinary tort actions because its provisions are

limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right."). To state a claim under 52.1, the plaintiff must demonstrate that the interference with the constitutional right was accompanied by an act of coercion. *Jones v. Kmart*, 17 Cal.4th 329, 334, 70 Cal.Rptr.2d 844, 949 P.2d 941 (1998) ("[S]ection 52.1 does require an attempted or completed act of interference with a legal right, accompanied by a form of coercion.")

In *Bender v. County of Los Angeles*, 217 Cal.App.4th 968, 977-978 (2013), the court held that where an arrest is unlawful and excessive force is used, a claim is stated under California Civil Code section 52.1. Thus, if a plaintiff establishes the elements for a claim for an unlawful arrest *and* excessive force, he may establish a claim for the violation of the Bane Act.[1]

### 4.   False Arrest and/or Imprisonment

False imprisonment is defined by statute as "the unlawful violation of the personal liberty of another." Cal. Pen. Code. § 236. The tort is defined identically, and consists of the "nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short." *Molko v. Holy Spirit Assoc.*, 46 Cal.3d 1092, 1123 (1988). "The only mental state required to be shown for false imprisonment is the intent to confine, or to create a similar intrusion." *Fermino v. FedCo. Inc.*, 7 Cal.4th 701, 716 (1994).

To succeed on a claim for false imprisonment, Plaintiff must state facts showing either that he was unlawfully arrested and then imprisoned, or that an unreasonable delay occurred in presenting the arrestee before a judge. *City of Newport Beach v. Sasse*, 9 Cal.App.3d 803, 810 (1970). However, there is no civil liability for an officer "acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest" when (1) the arrest was lawful, or the officer had reasonable cause to believe the arrest was lawful at the time of the arrest, or (2) the arrest was made pursuant to a charge made, upon reasonable cause, of the commission of a felony by the person to be

---

[1] The court was careful to exclude from its analysis whether a Bane Act violation can be demonstrated when the arrest is lawful but excessive force is used. *Bender* relied upon *Shoyoye v. County of Los Angeles*, 203 Cal.App.4th 947, 956 (2012), which considered whether a Bane Act violation can be founded only on a constitutional violation which, in and of itself, is inherently coercive. In rejecting that this is sufficient to state a claim under the Bane Act, *Shoyoye* held, "[W]here coercion is inherent in the constitutional violation alleged . . . the statutory requirement of 'threats, intimidation, or coercion' is not met. The statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself." *Id.* at 959.

arrested.  Cal. Pen. Code. § 847.

### 5. Assault

To establish claim of assault under California law, a plaintiff must show: (1) that the defendant intended or threatened to cause offensive contact (2) the plaintiff believed himself to be in imminent danger, (3) the contact occurred against the plaintiff's will, (4) the conduct caused harm, and (5) the defendant's conduct substantially caused the harm. *Yun Hee So v. Sook Ja Shin*, 151 Cal.Rptr.3d 257, 269 (2013).

### 6. Battery

Under California law, a battery occurs when: "(1) [a] defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) [the] plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to [the] plaintiff." *Brown v. Ransweiler*, 89 Cal.Rptr.3d 801, 811 (2009).  Significantly, this claim is analogous to a claim of the excessive use of force. *Brown*, 89 Cal.Rptr.3d at 811.  Thus, in a claim of battery against an officer, a plaintiff must allege that the officer used unreasonable force. *Id.*; *see also Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (1998).

### 7. Intentional Infliction of Emotional Distress

Under California law, claim for intentional infliction of emotional distress requires a plaintiff to show: (1) outrageous conduct by the defendants (2) who intended to cause or recklessly disregarded the probability of causing emotional distress, (3) and the defendants' actions were the actual and proximate cause (4) of Plaintiff's severe emotional suffering. *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004) (citing *Brooks v. United States*, 29 F. Supp. 2d 613, 617 (N.D. Cal. 1998)).  Outrageous conduct is demonstrated when a "defendant's conduct was 'so extreme as to exceed all bounds of that usually tolerated in a civilized society.'" *Van Horn v. Hornbeak*, 2009 U.S. Dist. LEXIS 16134, at *8 (E.D. Cal. Feb. 18, 2009) (quoting *Ricard v. Pacific Indemnity Co.*, 132 Cal. App. 3d 886, 895 (1982)).

### 8. Negligence

In general, to succeed on a claim for negligence, Plaintiff "must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003).  Importantly, "[t]o prevail in an action for negligence, the plaintiff must show that

the defendant owed a duty *to the plaintiff*." See *John B. v. Superior Court*, 38 Cal. 4th 1177, 1188 (2006) (emphasis added).

### 9. Municipal Liability

As a general rule, a local government entity may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Rather, a local government entity may only be held liable if it inflicts the injury of which a plaintiff complains. *Gibson*, 290 F.3d at 1185. Thus, a government entity may be sued under Section 1983 when a governmental policy or custom is the cause of a deprivation of federal rights. *Monell*, 436 U.S. at 694.

To establish liability, Plaintiff must show: (1) he was deprived of a constitutional right; (2) the County of Kern had a policy; (3) this policy amounted to deliberate indifference of his constitutional right; and (4) the policy "was the moving force behind the constitutional violation." *See Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)); *see also Monell*, 436 U.S. at 690-92. There are three methods by which a policy or custom of a government may be demonstrated when:

> (1) A longstanding practice or custom…constitutes the standard operating procedure of the local government entity;
>
> (2) The decision-making official was, as a matter of law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or
>
> (3) An official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Pellum v. Fresno Police Dep't*, 2011 U.S. Dist. LEXIS 10698, at *8 (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005)).

To establish deliberate indifference, "the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Gibson,* 290 F.3d at 1186 (citing *Farmer*, 511 U.S. at 841). A policy amounts to deliberate indifference when "the need for more or different action is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need." *Mortimer v. Baca*, 594 F.3d 714, 722 (9th Cir. 2010) (citing

Oviatt, 954 F.2d at 1477-78); *accord Canton*, 489 U.S. at 390. Further, a plaintiff must "establish more than one incident to create a patterned and pervasive violation." *Jaquez v. County of Sacramento*, 2011 U.S. Dist. LEXIS 11165, at *6 (E.D. Cal. Feb. 1, 2011) (citing *Oklahoma v. Tuttle*, 471 U.S. 808, 824 (1985)); *see also Menotti*, 409 F.3d at 1147 (a policy may be inferred if there is evidence of repeated constitutional violations for which officers were not reprimanded). As a result, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out that policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

**10.     Punitive Damages**

Plaintiff has the burden of proving what, if any, punitive damages should be awarded by a preponderance of the evidence. NINTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS § 5.5 (2009). The jury must find that the defendant's conduct is "motivated by evil motive or intent, or . . . involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1986); *see also Larez v. Holcomb*, 16 F.3d 1513, 1518 (9th Cir. 1994).

**11.     Qualified Immunity**

Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, (2009).

The threshold inquiry is whether the facts alleged, when taken in the light most favorable to the plaintiff, show the defendant violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The right must be so "clearly established" that "a reasonable official would understand that what he is doing violates that right." *Id.* at 202. Thus, the Ninth Circuit summarized the sequential test for qualified immunity as: "(1) identification of the specific right being violated; (2) determination of whether the right was so clearly established as to alert a reasonable officer to its constitutional parameters; and (3) a determination of whether a reasonable officer would have believed that the policy

or decision in question was lawful." *McDade v. West*, 223 F.3d 1135, 1142 (9th Cir. 2000).

**H.   ABANDONDED ISSUES**

None

**I.   WITNESSES[2]**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses. NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

**Plaintiffs' Witness List:**

1. Denise Portugal
2. Babak Farivar
3. Maureen Martin
4. Ramon Snyder (on the list twice, so that is why there is one less witness in the order)
5. Ruby Skinner
6. Dan William Erickson
7. Ashutosh Pathak
8. Benjamin Chen
9. John Tran
10. Rajeev Krishan
11. Roger Clark
12. Elvia Cota
13. Hector Cota
14. Trinity Cota
15. Evelen Cota

---

[2] At the hearing, counsel agreed that medical records and training records may be introduced without an authenticating witness. Counsel SHALL meet and confer to determine whether they will require a custodian of records for any other records.

16. Ron Edler
17. Rick Montoya
18. Ernie Montoya
19. Eleazar Blannco
20. Ernesto Alvarado
21. John Hamish
22. Jaime Cota
23. Adrew Romanini
24. Adrian Olmos
25. Kenneth Smith
26. Guadalupe Rangle
27. Hany Aziz

**Defendant's Witness List:**

1. Deputy Ernest Alvarado
2. John Hamish
3. Curtis J. Cope
4. Phillipe Tampinco
5. Peter Longero
6. Sgt. William Keene
7. Nurse Fulkerson, R.N.
8. Kern County Nurse Edra
9. Jose Guadalupe Rangel
10. Eleazar Blanco
11. Sgt. Ken Smith
12. Sgt. Lombera
13. Sgt. Olmos
14. Deputy Romanini
15. Any witnesses identified by Plaintiffs.

12

16. Dr. Pathak, M.D.; Dr. Tran, M.D.; Dr. Dr. Chen, M.D.

17. Jaime Cota

18. Richard Gonzales, Investigator, G4S

**J. EXHIBITS, SCHEDULES AND SUMMARIES**

The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

**Plaintiff's Exhibits**

1. Records and files from Curtis Cope
2. Medical Records
3. Maps of location
4. Photos of Plaintiff and location of incident
5. Audio and video recordings
6. Police Report
7. Any Exhibits Listed by Defendants

**Defendants' Exhibits**

1. Incident report(s) prepared by Deputy Alvarado
2. Photographs of plaintiff's residence/scene
3. Photographs of plaintiff after the arrest incident
4. Sheriff's jail video depicting Plaintiff's arrival in Parking/Holding, Receiving and Booking, and custody of Plaintiff
5. Defendant's expert witness exhibits
6. Post Learning Domains
7. Sheriff Policies and Procedures
8. Deputy Alvarado training records
9. CJIIS records regarding Plaintiff's custody on December 4-5, 2011
10. Photographs of Plaintiff's injuries

11. Screening Questionnaire

12. Audio cd of dispatch

13. Event Chronology

14. Sheriff documents related to training requirements

15. Plaintiff's medical records

16. Any documents disclosed during discovery erroneously omitted herein.

On or before **April 10, 2015**, counsel **SHALL** meet and confer to discuss any disputes related to the above listed exhibits and to pre-mark and examining each other's exhibits.

1. At the exhibit conference, counsel will determine whether there are objections to the admission of each of the exhibits and will prepare separate indexes; one listing joint exhibits, one listing Plaintiff's exhibits and one listing Defendant's exhibits. In advance of the conference, counsel must have a complete set of their proposed exhibits in order to be able to fully discuss whether evidentiary objections exist. <u>Thus, any exhibit not previously provided in discovery **SHALL** be provided at least five court days in advance of the exhibit conference</u>.

2. At the conference, counsel shall identify any duplicate exhibits, i.e., any document which both sides desire to introduce into evidence. These exhibits **SHALL** be marked as a joint exhibit and numbered as directed above. Joint exhibits **SHALL** be admitted into without further foundation.

All Joint exhibits will be pre-marked with numbers preceded by the designation "JT" (e.g. JT/1, JT/2, etc.). Plaintiff's exhibits will be pre-marked with numbers beginning with 1 by the designation PX (e.g. PX1, PX2, etc.). Defendant's exhibits will be pre-marked with numbers beginning with 501 preceded by the designation DX (e.g. DX501, DX502, etc.). The Parties SHALL number each page of any exhibit exceeding one page in length (e.g. PX1-1, PX1-2, PX1-3, etc.).

If originals of exhibits are unavailable, the parties may substitute legible copies. If any document is offered which is not fully legible, the Court may exclude it from evidence.

Each joint exhibit binder shall contain an index which is placed in the binder before the exhibits. The index shall consist of a column for the exhibit number, one for a description of the exhibit and one column entitled "Admitted in Evidence" (as shown in the example below).

///

**INDEX OF EXHIBITS**

| EXHIBIT# | DESCRIPTION | ADMITTED IN EVIDENCE |
|---|---|---|

3. As to any exhibit which is not a joint exhibit but to which there is no objection to its introduction, the exhibit will likewise be appropriately marked, i.e., as PX1, or as DX501 and will be indexed as such on the index of the offering party. Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

4. Each exhibit binder shall contain an index which is placed in the binder before the exhibits. Each index shall consist of the exhibit number, the description of the exhibit and the three columns as shown in the example below.

**INDEX OF EXHIBITS**

| EXHIBIT# | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|---|---|---|---|---|

5. On the index, as to exhibits to which the only objection is a lack of foundation, counsel will place a mark under the column heading entitled "Admissible but for Foundation."

6. On the index, as to exhibits to which there are objections to admissibility that are not based solely on a lack of foundation, counsel will place a mark under the column heading entitled "Other Objections."

After the exhibit conference, each counsel SHALL develop four complete, legible sets of exhibits. Counsel SHALL deliver three sets of their exhibit binders to the Courtroom Clerk and provide one set to opposing counsel, no later than 4:00 p.m., on **May 1, 2015**. Counsel SHALL determine which of them will also provide three sets of the joint exhibits to the Courtroom Clerk.

7. The Parties SHALL number each page of any exhibit exceeding one page in length.

**K.   DISCOVERY DOCUMENTS**

The following is a list of discovery documents – portions of depositions, answers to interrogatories, and responses to requests for admissions – that the parties expect to offer at trial. NO DISCOVERY DOCUMENT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE

ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(12).

**Plaintiff anticipates offering the following discovery documents at trial**:

1. Responses to requests for production
2. Documents produced by persons most knowledgeable
3. Amended responses to request for production
4. Any and all deposition transcripts

**Defendant anticipates offering the following discovery documents at trial**:

1. The depositions taken in this matter for all purposes allowed under the Federal Rules of Civil Procedure and Evidence.

If either party wishes to rely upon discovery documents or deposition transcripts at trial, they SHALL lodge the original discovery requests and responses and/or the original or certified copy of the pertinent transcripts, no later than **May 1, 2015.** If the proffering party wishes the jury to view the discovery document, only the request and response at issue may be visible on the page(s) and all extraneous material must be redacted or the request and the response re-typed on a clean page.[3]

## L.   FURTHER DISCOVERY OR MOTIONS

No further discovery is sought by either party.

## M.   MOTIONS IN LIMINE

Any party may file motions in limine. The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial. "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984); *Jonasson v. Lutheran Child and Family Services*, 115 F. 3d 436, 440 (7th Cir. 1997). The Court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. *Id.*

---

[3] Counsel should have at least two extra copies of the redacted version for review by the Court and opposing counsel before publication is allowed.

1  **In advance of filing any motion in limine, counsel SHALL meet and confer to determine whether they can resolve any disputes and avoid filing motions in limine. Along with their motions in limine, the parties SHALL file a certification demonstrating counsel have in good faith met and conferred and attempted to resolve the dispute. Failure to provide the certification may result in the Court refusing to entertain the motion.**

Any motions in limine must be served on the other party and filed with the Court by **April 1, 2015.** The motion must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial. Any opposition to the motion must be served on the other party, and filed with the Court by **April 17, 2015**. The Court sets a hearing on the motions in limine on **April 28, 2015,** at 10:30 a.m. Appearances via Courtcall are authorized.

The parties are reminded they may still object to the introduction of evidence during trial.

**N.   STIPULATIONS**

None at this time.

**O.   AMENDMENTS/ DISMISSALS**

None at this time.

**P.   SETTLEMENT NEGOTIATIONS**

The parties report that they engaged in mediation on January 23, 2015, and the matter was not resolved. (Doc. 24 at 13.) However, Defendants will present a mediator's proposal to the Kern County Board of Supervisors on February 10, 2015.

**Q.   AGREED STATEMENT**

None

**R.   SEPARATE TRIAL OF ISSUES**

None.

**S.   APPOINTMENT OF IMPARTIAL EXPERTS**

None requested.

**T.   ATTORNEYS' FEES**

If successful at trial, Plaintiff will be seeking attorney fees pursuant to 42 U.S.C§ 1988(b), California Civil Code Section 52.1(h), and California Government Code Sections 820(a) and 815.2(a).

17

Similarly, if successful, Defendants will seek an award of attorney fees and costs. (Doc. 24 at 14.)

**U.    TRIAL DATE/ ESTIMATED LENGTH OF TRIAL**

Jury trial is set for **May 13, 2015**, at 8:30 a.m. before the Honorable Jennifer L. Thurston at the United States Courthouse, 510 19th Street, Bakersfield, California. Trial is expected to last no longer than 4-7 days.

**V.    TRIAL PREPARATION AND SUBMISSIONS**

**1.    Trial Briefs**

The parties are relieved of their obligation under Local Rule 285 to file trial briefs. If any party wishes to file a trial brief, they must do so in accordance with Local Rule 285 and be filed on or before **May 8, 2015.**

**2.    Jury Voir Dire**

The parties are required to file their proposed voir dire questions, in accordance with Local Rule 162.1, on or before **May 8, 2015.**

**3.    Statement of the Case**

The parties **SHALL** file a joint non-argumentative, brief statement of the case which is suitable for reading to the jury at the outset of jury selection on or before **May 8, 2015.**

**4.    Jury Instructions & Verdict Form**

The parties shall serve, via e-mail or fax, their proposed jury instructions in accordance with Local Rule 163 and their proposed verdict form on one another no later than **April 10, 2015.** The parties shall conduct a conference to address their proposed jury instructions and verdict form no later than **April 24, 2015.** At the conference, the parties **SHALL** attempt to reach agreement on jury instructions and verdict form for use at trial. The parties shall file all agreed-upon jury instructions and verdict form no later than **May 1, 2015**, and identify such as the agreed-upon jury instructions and verdict forms. At the same time, the parties **SHALL** lodge via e-mail a copy of the joint jury instructions and joint verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

**If and only if, the parties after genuine, reasonable and good faith effort** cannot agree upon certain specific jury instructions and verdict form, the parties shall file their respective proposed (disputed) jury instructions and proposed (disputed) verdict form no later than **May 1, 2015,** and

identify such as the disputed jury instructions and verdict forms. At the same time, the parties **SHALL** lodge via e-mail, a copy of his/their own (disputed) jury instructions and proposed (disputed) verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury Instructions or California's CACI instructions to the extent possible. All jury instructions and verdict forms shall indicate the party submitting the instruction or verdict form (i.e., joint, plaintiff's, defendant's, etc.), the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the **complete** text of the instruction, and the legal authority supporting the instruction. Each instruction SHALL be numbered.

**W.    OBJECTIONS TO PRETRIAL ORDER**

Any party may, within 10 days after the date of service of this order, file and serve written objections to any of the provisions set forth in this order. Such objections shall clearly specify the requested modifications, corrections, additions or deletions.

**X.    MISCELLANEOUS MATTERS**

None.

**Y.    COMPLIANCE**

Strict compliance with this order and its requirements is mandatory. All parties and their counsel are subject to sanctions, including dismissal or entry of default, for failure to fully comply with this order and its requirements.

IT IS SO ORDERED.

Dated:    **February 2, 2015**              **/s/ Jennifer L. Thurston**
                                           UNITED STATES MAGISTRATE JUDGE